

**U.S. Department of Justice**

*Leah B. Foley*
*United States Attorney*
*District of Massachusetts*

*Main Reception: (617) 748-3100*     *John Joseph Moakley United States Courthouse*
*1 Courthouse Way*
*Suite 9200*
*Boston, Massachusetts 02210*

February 14, 2025

Robert L. Sheketoff, Esq.
Law Offices of Robert L. Sheketoff
1 McKinley Square, 3rd Floor
Boston, MA 02109

    Re:   United States v. David Fuhrmann     25cr10066
           Criminal No.

Dear Attorney Sheketoff:

The United States Attorney for the District of Massachusetts (the "U.S. Attorney") and your client, David Fuhrmann ("Defendant"), agree as follows, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B):

    1.    <u>Change of Plea</u>

Defendant will waive Indictment and plead guilty to Count One of the Information: conspiracy to violate the Anti-Kickback Statute, in violation of 18 U.S.C. § 371. Defendant admits that Defendant committed the crime specified in this count and is in fact guilty.

Defendant agrees to venue of the case in the District of Massachusetts. Defendant knowingly waives any applicable statute of limitations and any legal or procedural defects in the Information.

Defendant agrees that the facts set forth in the attached Agreed Statement of Facts are true and accurate.

    2.    <u>Penalties</u>

Defendant faces the following maximum penalties: incarceration for five years; supervised release for three years; a fine of $250,000 or twice the gross pecuniary gain or loss, whichever is

greater; a mandatory special assessment of $100; restitution; and forfeiture to the extent charged in the Information.

3. <u>Sentencing Guidelines</u>

The parties agree, based on the following calculations, that Defendant's total "offense level" under the Guidelines is 31:

a) Defendant's base offense level is 8 under the applicable guideline (USSG § 2B4.1(a));

b) Defendant's offense level is increased by 22 because the improper benefit to be conferred was more than $25,000,000 and less than $65,000,000 (USSG § 2B4.1(b)(1)(L));

c) Defendant's offense level is increased by 4 because he was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive (USSG § 3B1.1(a)); and

d) Defendant's offense level is decreased by 3 levels because Defendant has accepted responsibility for Defendant's crime (USSG § 3E1.1).

Defendant understands that the Court is not required to follow this calculation or even to sentence Defendant within the Guidelines and that Defendant may not withdraw Defendant's guilty plea if Defendant disagrees with how the Court calculates the Guidelines or with the sentence the Court imposes.

Defendant also understands that the government will object to any reduction in Defendant's sentence based on acceptance of responsibility if: (a) at sentencing, Defendant (directly or through counsel) indicates that Defendant does not fully accept responsibility for having engaged in the conduct underlying each of the elements of the crime to which Defendant is pleading guilty; or (b) by the time of sentencing, Defendant has committed a new federal or state offense, or has in any way obstructed justice.

If, after signing this Agreement, Defendant's criminal history score or Criminal History Category is reduced, the U.S. Attorney reserves the right to seek an upward departure under the Guidelines.

Nothing in this Plea Agreement affects the U.S. Attorney's obligation to provide the Court and the U.S. Probation Office with accurate and complete information regarding this case.

4. <u>Sentence Recommendation</u>

The U.S. Attorney agrees to recommend the following sentence to the Court:

a) Incarceration for 60 months;

2

    b) a fine within the Guidelines sentencing range as calculated by the Court at sentencing, excluding departures, unless the Court finds that Defendant is not able, and is not likely to become able, to pay a fine;

    c) 12 months of supervised release;

    d) a mandatory special assessment of $100, which Defendant must pay to the Clerk of the Court by the date of sentencing;

    e) restitution of $27,225,434.44 due to the Center for Medicare and Medicaid Services, plus any other amounts determined by the Court, to be joint and several; and

    f) forfeiture as set forth in Paragraph 6.

Based on the factors set forth in 18 U.S.C. § 3553(a), Defendant is free to recommend whatever sentence he deems appropriate as to incarceration, fine, and supervised release. Defendant agrees with the U.S. Attorney's recommendation of the mandatory special assessment, restitution, and forfeiture.

Defendant agrees that all criminal monetary penalties, including special assessment, restitution, forfeiture, and/or fine imposed shall be due and payable immediately, and further agrees that any Court-ordered repayment schedule does not preclude further enforcement or collection by the United States.

    5. <u>Waiver of Appellate Rights and Challenges to Conviction or Sentence</u>

Defendant has the right to challenge Defendant's conviction and sentence on "direct appeal." This means that Defendant has the right to ask a higher court (the "appeals court") to look at what happened in this case and, if the appeals court finds that the trial court or the parties made certain mistakes, overturn Defendant's conviction or sentence. Also, in some instances, Defendant has the right to file a separate civil lawsuit claiming that serious mistakes were made in this case and that Defendant's conviction or sentence should be overturned.

Defendant understands that Defendant has these rights, but now agrees to give them up. Specifically, Defendant agrees that:

    a) Defendant will not challenge Defendant's <u>conviction</u> on direct appeal or in any other proceeding, including in a separate civil lawsuit; and

    b) Defendant will not challenge Defendant's <u>sentence,</u> including any court orders related to forfeiture, restitution, fines or supervised release, on direct appeal or in any other proceeding, including in a separate civil lawsuit.

Defendant understands that, by agreeing to the above, Defendant is agreeing that Defendant's conviction and sentence will be final when the Court issues a written judgment after the sentencing hearing in this case. <u>That is, after the Court issues a written judgment, Defendant will lose the right to appeal or otherwise challenge Defendant's conviction and sentence, regardless of whether Defendant later changes Defendant's mind or finds new information that would have led Defendant not to agree to give up these rights in the first place.</u>

Defendant is agreeing to give up these rights at least partly in exchange for concessions the U.S. Attorney is making in this Agreement.

The parties agree that, despite giving up these rights, Defendant keeps the right to later claim that Defendant's lawyer rendered ineffective assistance of counsel, or that the prosecutor or a member of law enforcement involved in the case engaged in misconduct serious enough to entitle Defendant to have Defendant's conviction or sentence overturned.

6. <u>Forfeiture</u>

Defendant understands that the Court will, upon acceptance of Defendant's guilty plea, enter an order of forfeiture as part of Defendant's sentence, and that the order of forfeiture may include assets directly traceable to Defendant's offense, assets used to facilitate Defendant's offense, substitute assets and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offense.

The assets to be forfeited specifically include, without limitation, the following:

    a. $1,242,000 in United States currency, to be entered in the form of an Order of Forfeiture (Money Judgment).

Defendant admits that $1,242,000 is subject to forfeiture on the grounds that it is equal to the amount of proceeds Defendant derived from the offense.

Defendant acknowledges and agrees that the amount of the forfeiture money judgment represents proceeds the Defendant obtained (directly or indirectly), and/or facilitating property and/or property involved in, the crime to which Defendant is pleading guilty and that, due at least in part to the acts or omissions of Defendant, the proceeds or property have been transferred to, or deposited with, a third party, spent, cannot be located upon exercise of due diligence, placed beyond the jurisdiction of the Court, substantially diminished in value, or commingled with other property which cannot be divided without difficulty. Accordingly, Defendant agrees that the United States is entitled to forfeit as "substitute assets" any other assets of Defendant up to the value of the now missing directly forfeitable assets.

Defendant agrees to consent to the entry of an order of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding the forfeiture at the change-of-plea hearing, announcement of the forfeiture at sentencing, and incorporation of

the forfeiture in the judgment. Defendant understands and agrees that forfeiture shall not satisfy or affect any fine, lien, penalty, restitution, cost of imprisonment, tax liability or any other debt owed to the United States.

If the U.S. Attorney requests, Defendant shall deliver to the U.S. Attorney within 30 days after signing this Plea Agreement a sworn financial statement disclosing all assets in which Defendant currently has any interest and all assets over which Defendant has exercised control or has had any legal or beneficial interest. Defendant further agrees to be deposed with respect to Defendant's assets at the request of the U.S. Attorney. Defendant agrees that the United States Department of Probation may share any financial information about the Defendant with the United States Attorney's Office.

Defendant also agrees to waive all constitutional, legal, and equitable challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement.

Defendant hereby waives and releases any claims Defendant may have to any vehicles, currency, or other personal property seized by the United States, or seized by any state or local law enforcement agency and turned over to the United States, during the investigation and prosecution of this case, and consents to the forfeiture of all such assets.

7.  Civil Liability

This Plea Agreement does not affect any civil liability, including any tax liability, Defendant has incurred or may later incur due to Defendant's criminal conduct and guilty plea to the charges specified in Paragraph 1 of this Agreement.

8.  Breach of Plea Agreement

Defendant understands that if Defendant breaches any provision of this Agreement, violates any condition of Defendant's pre-trial release or commits any crime following Defendant's execution of this Plea Agreement, Defendant cannot rely upon such conduct to withdraw Defendant's guilty plea. Defendant's conduct, however, would give the U.S. Attorney the right to be released from the U.S. Attorney's commitments under this Agreement, to pursue any charges that were, or are to be, dismissed under this Agreement, and to use against Defendant any of Defendant's statements, and any information or materials Defendant provided to the government during investigation or prosecution of Defendant's case—even if the parties had entered any earlier written or oral agreements or understandings about this issue.

Defendant also understands that if Defendant breaches any provision of this Agreement or engages in any of the aforementioned conduct, Defendant thereby waives any defenses based on the statute of limitations, constitutional protections against pre-indictment delay, and the Speedy Trial Act, that Defendant otherwise may have had to any charges based on conduct occurring before the date of this Agreement.

9. <u>Who is Bound by Plea Agreement</u>

This Agreement is only between Defendant and the U.S. Attorney for the District of Massachusetts. It does not bind the Attorney General of the United States or any other federal, state, or local prosecuting authorities.

10. <u>Modifications to Plea Agreement</u>

This Agreement can be modified or supplemented only in a written memorandum signed by both parties, or through proceedings in open court.

\*     \*     \*

If this letter accurately reflects the agreement between the U.S. Attorney and Defendant, please have Defendant sign the Acknowledgment of Plea Agreement below. Please also sign below as Witness. Return the original of this letter to Assistant U.S. Attorney Howard Locker.

Sincerely,

LEAH B. FOLEY
United States Attorney

By: _____
Kelly Begg Lawrence
Chief, Health Care Fraud Unit
Mackenzie A. Queenin
Deputy Chief, Health Care Fraud Unit

_____
Howard Locker
Assistant U.S. Attorney

## ACKNOWLEDGMENT OF PLEA AGREEMENT

I have read this letter and discussed it with my attorney. The letter accurately presents my agreement with the United States Attorney's Office for the District of Massachusetts. There are no unwritten agreements between me and the United States Attorney's Office, and no United States government official has made any unwritten promises or representations to me in connection with my guilty plea. I have received no prior offers to resolve this case.

I understand the crime I am pleading guilty to, and the maximum penalties for that crime. I have discussed the Sentencing Guidelines with my lawyer, and I understand the sentencing ranges that may apply.

I am satisfied with the legal representation my lawyer has given me, and we have had enough time to meet and discuss my case. We have discussed the charge against me, possible defenses I might have, the terms of this Agreement and whether I should go to trial.

I am entering into this Agreement freely and voluntarily and because I am in fact guilty of the offense. I believe this Agreement is in my best interest.

_____
David Fuhrmann
Defendant

Date: 2/18/25

I certify that David Fuhrmann has read this Agreement and that we have discussed what it means. I believe David Fuhrmann understands the Agreement and is entering into it freely, voluntarily, and knowingly. I also certify that the U.S. Attorney has not extended any other offers regarding a change of plea in this case.

_____
Robert L. Sheketoff,, Esq.
Attorney for Defendant

Date: 2/18/25

Agreed Statement of Facts

Defendant agrees to the accuracy of this statement of facts.

From in or about June 2013 continuing into at least September 2020, Defendant knowingly and willingly conspired and agreed with his co-conspirators to offer, pay, solicit, and receive kickbacks and bribes in violation of 18 U.S.C. § 371, by paying doctors based on the number of transcranial Doppler ("TCD") ultrasounds they ordered, including for beneficiaries insured by Medicare and through private insurers. Medicare is a "Federal health care program" as defined in 42 U.S.C. §1320a-7b(f). Furthermore, Medicare is a federal health care program affecting commerce. Medicare does not pay for claims induced through kickbacks and bribes. Moreover, compliance with the Anti-Kickback Statute is a condition of enrollment in Medicare.

During the relevant period, Defendant was the National Sales Director for a collection of entities that performed mobile diagnostic services (collectively, "TCD Company"), including TCD ultrasounds in doctors' offices and at its own office. TCD Company was based in Long Island, New York, but operated in multiple states, including Massachusetts.[1] TCD Company billed claims for TCD ultrasounds it performed to the patient's insurer(s).

Beginning in or around June 2013, Defendant conspired with Timothy Doyle, who was the TCD Company's Chief Operating Officer; CC-1, a Director of Operations and Sales Director-Northeast for TCD Company; CC-2, TCD Company's Chief Financial Officer; and various doctors, including Donald Salzberg, Kenneth Fishberger, and Vishnudat Seodat. Defendant and CC-1 arranged with doctors to pay based on the number of TCD ultrasounds the doctors ordered. Depending on the time period, as Defendant determined, the amount per TCD ultrasound varied between approximately $100 and $150. Defendant and his co-conspirators at TCD Company had different roles in facilitating these payments, from preparing sham contracts to disguise that doctors were paid per test; calculating the amount due each month; and preparing and delivering cash and check payments to the doctors. Defendant's role included offering doctors the kickbacks, calculating the monthly kickback payments, facilitating delivery of and delivering cash kickback payments, and causing the preparation of sham contracts.

Defendant acknowledges the following conduct constitutes relevant conduct under U.S.S.G. § 1B1.3(a). To order TCD ultrasounds, Fuhrmann and CC-1 provided doctors with specific diagnosis codes, including for medical conditions called vertebro-basilar insufficiency or vertebrobasilar syndrome and occlusion and stenosis of one or both carotid arteries, which TCD Company generally needed to use to ensure payment from insurance companies. Without these specific diagnoses, insurance companies generally would not pay TCD Company's TCD ultrasound claims. The doctors subsequently signed many prescriptions and orders in which a doctor or a TCD Company technician indicated or checked off that a given patient had one of those conditions even though the patients generally did not actually have those conditions. TCD Company also billed procedure codes it claimed to perform, although it did not. Defendant was aware of at least two of these codes but took no steps to refund claims already billed or to stop

---

[1] Defendant is aware that TCD Company provided imaging services in Massachusetts.

billing that procedure code going forward. Moreover, the scheme, including the kickbacks, also involved private insurance companies.

TCD Company fraudulently billed Medicare for approximately $70.6 million for TCD ultrasounds. Medicare paid approximately $27.2 million for these fraudulent claims. In total, during the time he worked for TCD Company, Defendant received approximately $1.25 million in proceeds from the scheme.

In furtherance of the charged conspiracy, (1) on or about December 12, 2014, Defendant facilitated Doyle delivering cash kickbacks to an employee at Dr. Kenneth Fishberger's office; (2) on or about October 18, 2016, Defendant delivered cash kickbacks to Dr, Fishberger; (3) on or about September 6, 2017, in response to a question from CC-2 asking "How much cash did u give yesterday[?]," Fuhrmann informed CC-2 that Fuhrmann paid Dr. Donald Salzberg cash kickbacks of $8,625 for 85 tests; (4) on or about August 8, 2019, Fuhrmann delivered cash kickbacks to Dr. Salzberg; and (5) on or about July 20, 2020, Fuhrmann arranged for CC-1 to assist a doctor in creating false and/or misleading medical records to respond to a request for records from a private health insurer relating to TCD ultrasounds performed by TCD Company.

The preceding statement is a summary made for the purpose of assuring the Court of the factual basis for Defendant's guilty plea. It does not include all facts known to Defendant or the government regarding his illegal activities. Defendant acknowledges and agrees with this statement knowingly and voluntarily because he is in fact guilty of the crime charged.